JAMES W. OGDEN *v.* ERASTUS C. SANDERSON.

A surrender of a written lease cannot be made by parol. It must be by writing or by operation of law.

An eviction of a tenant is an interference with his possession of the demised premises, or some part thereof, by or with the consent of the landlord, whereby the tenant is deprived of the use without his assent.

Where a tenant left the demised premises in the middle of a quarter, to allow the repair of damages caused by a fire, the lease providing that in such case the rent should cease until the reparation was completed; *held*, that a subsequent occupation of the premises, with the landlord's assent, by a third person as tenant, terminating before the completion of the repairs, could not be deemed an eviction of the original tenant, he having been present at a negotiation between the landlord and such third person for reletting to the latter, and at the same time himself proposing to surrender his lease.

Acts amounting to a temporary eviction of a tenant, simply suspend the rent dur-

ing the continuance of the eviction; and the same being terminated, the landlord is entitled to the rent which had accrued when such eviction commenced.

The proposal, to his landlord by a tenant, who has temporarily left the demised premises during repairs rendered necessary by a fire, to surrender the premises, and the temporary occupation thereof by a third person under the procurement of the landlord, and with the tenant's consent, such third person being in negotiation to obtain a reletting to himself, in place of the first tenant, do not constitute an alteration of the original lease, exempting a surety from liability for the rent, the lease not being altered by any writing signed by the landlord, and the proposed surrender not having been accepted by him.

All the evidence, documentary and parol, used on the trial in the Marine or a justice's court, should be furnished to the appellate court upon an appeal.

THE plaintiff in this action having leased certain premises to one Phelps for nine years, from May 1st, 1852, the defendant, by a writing at the foot of the lease, became surety for the payment of the rent to November 1st, 1853. The lease contained a provision that in case the building should be injured or destroyed by fire, the rent should " cease until the premises were repaired or rebuilt." The buildings burned down on the 24th of June, 1853.

This suit was brought in the Marine Court to recover the rent of the quarter ending August 1, 1853, and the rent accruing on the first of November, 1853, making a deduction for the period which, as the plaintiff conceded, elapsed after the fire before the rebuilding was completed. Interest was charged from the respective quarter days. The plaintiff demanded but one month's rent of the last quarter, although he claimed that the buildings were wholly restored on about the 18th of September. There was testimony, however, that the reparation was not complete until after the first of November.

The defendant insisted : 1, That by the terms of the lease, the destruction of the building created a forfeiture of the rent for the whole quarter in which the fire occurred; 2, That the lessee had been evicted, and also that there had been a surrender by him and an acceptance of such surrender by the landlord; and 3, That the terms of the lease had, in effect, been so altered as to exempt the surety from liability.

The facts were not very clearly defined in the evidence. It would appear, however, that in October, at about the time the premises were ready or nearly ready for reoccupation, the lessee, Phelps, desired not to resume possession; that consequently, the landlord, lessee, and surety, with one Jennings, who wished to obtain a lease, met for the purpose of making some arrangement, and in this interview it was proposed that the rent which had accrued should be adjusted and paid and a new lease be given to Jennings; that, in the presence of the other persons above mentioned, Jennings took the key from the place where it was hanging in the landlord's place of business, with the avowed purpose—to which no objection was made—of taking possession of the building, and he immediately afterwards did so by putting certain machinery therein; that no use was made of the machinery, Jennings expecting to receive a lease in November; that on the occasion above stated, the original lessee's proposal to surrender was distinctly made; that no agreement having been consummated respecting the back rent, the lessee and surety did not receive the release which they had expected to obtain, and the landlord did not execute a lease to Jennings; that in November, 1853, Jennings, refusing to vacate the building, was summarily dispossessed by the landlord, leaving the premises without any actual occupant.

This action being brought to recover the rent as above claimed, the defendant recovered judgment, from which the plaintiff appealed. The lease itself was not annexed to the return from the court below, but there was no controversy as to its terms in the argument of the appeal.

*George C. Goddard*, for the plaintiff.

*Levi A. Lockwood*, for the defendant.

By the Court. Ingraham, First J.—This action is against a surety for rent. No copy of the lease is furnished to the court by which we can ascertain the terms of it, and the only

information we have of the conditions, is the statement of the counsel that the lease contained a clause providing that the rent should cease till the buildings should be rebuilt, if they were destroyed by fire.

The evidence shows that the buildings were destroyed by fire on the 24th June. Supposing this statement of the condition of the lease to be true, the rent ceased on that day, and the landlord was entitled to recover for the rent from 1st May to 24th June, payable on the quarter day, 1st August.

An eviction and surrender are both set up in the answer by way of defence to the claim for the August quarter and part of the November quarter. No surrender is proven; a proposed surrender was talked of, but not executed, and this lease could only be surrendered by writing or by operation of law.

Nor do I think the evidence warrants the finding of an eviction. The rent was not to recommence until the premises were rebuilt. What the precise terms of this covenant were does not appear, but it is evident from the testimony that the premises were not properly finished up to the 1st of November, 1853. Jennings so testified, and there is nothing to contradict his testimony. If not finished, the rent for the quarter ending 1st November was not payable, and neither Phelps nor Sanderson was liable on that quarter for anything. Jennings appears to have been negotiating for a lease at the same time that Phelps was negotiating for a surrender, and he obtained possession of the key at a time when all were present, and it may be presumed with their assent. All these negotiations, however, appear to have failed. An eviction of the tenant is an interference with his possession of the premises or some part thereof, by or with the consent of the landlord, by which the tenant is deprived of the use without his assent; but where the tenant is present at a negotiation to relet the premises to a third person and does not object, but at the same time is proposing a surrender on his own part, a possession by such third person, under such circumstances, and particularly before the building was finished, could hardly be considered an eviction.

But even admitting that for the time during the occupation

of the premises by Jennings, Phelps is to be considered as evicted by the landlord, such eviction only suspends the rent during the continuance of the eviction. The evidence shows that Jennings has been removed from the premises and that they are unoccupied, and consequently that the eviction is at an end. The plaintiff's right to the rent up to June 24th appears therefore to be a valid one, and I think should have been allowed on the trial.

The defendant urges that the transaction between Phelps and Ogden amounted to a surrender. There is not evidence to warrant such a conclusion, but if it were proved that there was a legal surrender, still that would not affect the plaintiff's claim for the rent of the portion of the quarter previous to the fire.

It is said that such a surrender was an alteration of the contract, by which the surety was discharged. It is a sufficient answer to this objection to say that no legal alteration of the contract could be made except in writing, and that the proposed alteration was never completed by the signature of the landlord to the surrender or his acceptance of it.

I feel some hesitation in deciding that the judgment must be reversed, because the documentary evidence before the court below is not furnished to this court with the return, and it is only because the counsel on both sides have stated the conditions of the lease that we have examined the points submitted. It is important that the court should have all the testimony, in order properly to understand the reasons for the decision below. From what is furnished to us, we think the first item of the plaintiff's claim should have been allowed.

*Judgment reversed.*